Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 500 | **DATE** | 11/13/2001 |
| **CASE TITLE** | HOSTY, et al. vs. GOVERNORS STATE UNIVERSITY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion for summary judgment [35-1] is granted in part and denied in part. The motion is granted as to all defendants except Patricia Carter. Defendants Dorothy Ferguson and Claude Hill are dismissed pursuant to Fed.R.Civ.P. 4(m). The remaining parties shall present their joint final pretrial order and agreed jury instructions on December 11, 2001 at 9:00 am. Plaintiffs shall provide defendant Carter with their draft pretrial order by November 30, 2001. The case is set for trial on January 7, 2002 at 9:00 am.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | **NOV 1 6 2001** date docketed | 57 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | FOR DOCKETING 01 NOV 15 PM 4: 54 | 11/13/2001 date mailed notice | |
| SB | courtroom deputy's initials | | CB mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGARET HOSTY, et al. ) | |
| ) | |
| Plaintiff, ) | No. 01 C 500 |
| ) | |
| v. ) | Suzanne B. Conlon, Judge |
| ) | |
| GOVERNORS STATE UNIVERSITY, et al. ) | |
| ) | |
| Defendants. ) | |

**DOCKETED**
**NOV 1 6 2001**

## MEMORANDUM OPINION AND ORDER

Margaret Hosty, Jeni Porche and Steven Barba, individually and doing business as Innovator (collectively "plaintiffs"), sue officers of Governors State University ("GSU") for prior restraint violations of the First Amendment (Count I), equitable relief (Count II) and punitive damages (Count III), pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2202. Defendants move for summary judgment.

## BACKGROUND

**I. The Facts**

**A. The Parties**

All facts are undisputed unless otherwise noted. GSU is a state-run institution in University Park, Illinois. Plaintiffs are GSU students and former editors and writers of GSU's student newspaper, the Innovator. The Innovator is funded through student activities fees. Defendant Donald Bell is a GSU program director and was the administrative liaison to the Student Communications Media Board ("the media board"), which regulates and appropriates the Innovator's budget. Defendant Tommy Dascenzo was a GSU program director. Defendant Patricia Carter is

1

Dean of Student Affairs. Defendant Stuart Fagan is President of GSU. Defendant Paul Keys is GSU's Provost and Vice President of Academic Affairs. Defendant Jane Wells is a GSU faculty member. Defendant Debra Conway is a GSU secretary. Defendant Peggy Woodard is the interim Associate Provost. Defendants Frances Bradley, Peter Gunther, Ed Kammer, Dorothy Ferguson, Claude Hill and Judy Young are members of the media board. Defendant Paul Schwellenbach supervises GSU's mailroom.

**B. The Claims**

Plaintiffs began working for the Innovator in May 2000. The newspaper has a faculty advisor that advises the editors and writers on issues of journalistic standards and ethics. But the student editors and writers are given complete editorial control over the newspaper, including its subject matter and content. The faculty advisor normally signs-off on the newspaper before it is sent to the printer. GSU entered into a contract with Regional Publishing Company to print the Innovator on a bimonthly basis. However, the newspaper rarely printed that frequently during plaintiffs' tenure.

In May 2000, the Innovator's office equipment and computers were in disrepair. During the summer of 2000, the Innovator received new equipment, which included two digital scanners and three new computers. One of the newspaper's computers needed repairs but the media board would not authorize payment. Plaintiffs contend Donald Bell removed one of the Innovator's computers that contained the newspaper's files without their permission. Hosty dep. at p. 128; Porche dep. at pp. 146-47. Bell removed and replaced the computer because plaintiffs had complained the computer was non-functioning. Bell returned the computer after plaintiffs complained about its removal.

Plaintiffs contend they were denied access to computer software and manuals. Hosty dep.

2

at pp. 133-35. Bell was the administrator responsible for computer software. Because software purchased by the media board had disappeared, Bell stored computer software in his office available upon request. Plaintiffs attest Bell was rarely in his office when they needed the software. Hosty aff. ¶ 24; Porche aff. ¶ 24. Plaintiffs also contend Bell, Dascenzo and the media board inhibited the newspaper's operations by replacing the newspaper's IBM computers with Macintosh ones. Hosty dep. at pp. 137-39. The media board replaced the IBM computers with Macintosh computers in order to conform to the media industry standard. Plaintiffs disagreed with the media board's assessment.

Prior to October 31, 2000, plaintiffs contend they were investigating a story regarding misappropriation of GSU funds and illegal hiring practices. Hosty dep. at pp. 44-46. Plaintiffs contend their investigations were inhibited because the Innovator did not have a private facsimile machine or mailbox. Thus, they contend sources were reluctant to provide the newspaper with tips knowing their correspondence was not private. Hosty dep. at pp. 84-85. Plaintiffs also contend persons with keys to the Innovator's office, such as Bell and Dean Carter, could have seen the projected articles and tips on the newspaper's bulletin board. Hosty dep. at pp. 62-63.

In late October and early November of 2000, Dean Carter placed two phone calls to Charles Richards, Regional Publishing's owner and president, regarding the printing of the Innovator. Richards attests Dean Carter called on behalf of the GSU administration and ordered Regional Publishing not to print the Innovator without prior approval of the newspaper's content by a GSU administrator. Richards attests he informed Dean Carter that requiring prior approval was probably unconstitutional; Carter responded that Richards must call her personally before printing the next issue of the newspaper and reminded him that GSU paid Regional Publishing. Richards aff. ¶¶ 4-6,

3

8. Richards recorded the nature of his conversations with Dean Carter in a letter and sent a copy to plaintiffs. *Id.* at ¶ 10-11. Dean Carter denies she demanded prior approval and contends she instructed Richards to call her regarding the newspaper so that a faculty member could review the paper for journalistic quality, *e.g.*, grammatical mistakes. She contends this was necessary because the newspaper's faculty advisor was at a new post four hours from campus and was not readily available to assist the Innovator staff. Carter dep. at pp. 12-15.

After being informed of the conversations with Regional Publishing, President Fagan had Vice President Keys question Dean Carter about the phone calls and Richards' letter. Dean Carter informed Keys that Richards' characterization of the phone calls was inaccurate and that she did not instruct Regional Publishing to "halt the presses." Vice President Keys did not contact Richards or the plaintiffs about the phone calls. Vice President Keys believed Richards' letter was inaccurate and reported his conversations with Dean Carter to President Fagan. During this same time period, plaintiffs distributed a letter to the GSU community regarding Dean Carter's phone calls to Regional Publishing and reported the matter to the Illinois College Press Association.

Prior to Dean Carter's phone calls, the October 31, 2000 issue of the Innovator had already been printed and delivered. Plaintiffs continued to work on the newspaper after the October 31 issue, but contend they did not submit any further issues to Regional Publishing because of its hesitation to print the newspaper after Dean Carter's phone calls. Specifically, Regional Publishing did not want to risk printing the newspaper and not being paid by GSU. Beedie (Regional Publishing manager) aff. ¶¶ 4-5; Hosty dep. at pp. 22, 34-37; Porche dep. at pp. 33-34.

The media board approves the budget and expenditures for the Innovator and other student media. The November and December 2000 media board meetings were canceled. The November

4

meeting was canceled so the new administrative liaison to the media board, Donald Bell, could familiarize himself with the issues pending before the media board. Bell was appointed administrative liaison one week before the scheduled November meeting. The December meeting was canceled due to the hospitalization of media board chairman Ed Kammer. Plaintiffs contend the cancellations prevented them from publishing the newspaper because the media board controlled the essential funds. Hosty dep. at p. 16. Bell and media board members Bradley, Gunther, Kammer and Young all attest the cancellations were reasonable and did not inhibit the newspaper's progress because the Innovator's budget was already in place. Bell dep. at pp. 52-53, 112-13; Bradley aff. at ¶ 6; Gunther aff. ¶¶ 6-7; Kammer aff. ¶¶ 6-9; Young aff. ¶ 6. Moreover, in a letter announcing cancellation of the December meeting, Bell stated he would authorize printing of the newspaper if the editors had an issue ready for publication. Plaintiffs contend there was no point in printing a December edition of the newspaper because the students had left for winter break. Hosty dep. at pp. 113-14. Plaintiffs Hosty and Porche also attest the media board held a meeting regarding their tenure as editors in February 2001. They attest Bell placed a GSU policeman outside the meeting room to prevent them from entering. Porche aff. ¶ 20; Hosty aff. ¶ 20.

In the summer of 2000, plaintiffs reported break-ins to the Innovator's office to Bell, Dascenzo and the media board. Plaintiffs contend Bell informed them he would file reports with GSU police and have the Innovator's locks changed. Hosty dep. at pp. 116-17. Plaintiffs attest after Bell failed to act, they reported the break-ins to GSU police and their faculty advisor, who had the locks changed. *Id.*; Porche aff. ¶ 18; Hosty aff. ¶ 18. Bell and Dascenzo attest that when plaintiffs informed them of the break-ins, they advised plaintiffs to refer the matter to GSU police. Bell dep. at pp. 74-76; Dascenzo aff. ¶ 8. Bell and Dascenzo had keys to the newspaper's office, but they did

not distribute the keys to any unauthorized individuals.

In October 2000, GSU police changed the newspaper's locks for a second time. As a result, plaintiffs were required to contact GSU police to gain access to the office for five weeks. Plaintiffs attest defendants Carter, Conway, Bell, Kammer and Wells knew the locks had been changed. Porche aff. ¶ 19, Hosty aff. ¶ 19. Plaintiffs contend the delay in gaining access to the newspaper's office disrupted the Innovator's press schedule. Porche aff. ¶ 21; Hosty aff. ¶ 21.

Plaintiffs claim the phone lines to the Innovator's office were disconnected for approximately two hours on October 25, 2000, but present no evidence of defendants' involvement. Porche dep. at p. 76. Plaintiffs also contend Innovator email messages were tampered with and deleted, but fail to present evidence of defendants' involvement. *Id.* at pp. 98-105. Plaintiffs claim Debra Conway destroyed Innovator advertisement forms and failed to process Innovator purchase orders. Porche dep. at pp. 121, 123, 126; Hosty dep. at p. 124. Conway denies ever destroying or failing to process Innovator materials. Conway aff. ¶¶ 12-20. Finally, plaintiffs contend Paul Schwellenbach tampered with Innovator mail. Hosty dep. at p. 128; Porche dep. at pp. 131, 136-37. Schwellenbach denies tampering with Innovator mail. He admits returning mail to Jeni Porche because he thought it was personal mail and GSU does not provide postage for private correspondence. Schwellenbach aff. ¶¶ 13-15.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. Nat'l Human Res. Comm., Inc.*,

218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

**II. Section 1983 Liability**

In § 1983 actions, an individual cannot be held liable unless he caused or participated in the asserted constitutional violation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). Defendants argue that other than Dean Carter, plaintiffs fail to establish individual involvement on the part of each defendant, and therefore the § 1983 claims must fail.

Plaintiffs contend Bell violated their First Amendment rights by denying them access to essential computer software and manuals, temporarily removing an Innovator computer without permission, failing to investigate break-ins to the newspaper's office, and cancelling the November and December media board meetings. Plaintiffs contend Tommy Dascenzo, Judy Young, Peter Gunther and Francis Bradley violated their First Amendment rights by replacing the IBM computers with Macintosh ones, failing to investigate break-ins to the newspaper's office, and holding a private meeting regarding plaintiffs' status as editors. Plaintiffs claim Debra Conway violated their First Amendment rights by failing to process Innovator requests and destroying Innovator advertisement forms. Plaintiffs contend Paul Schwellenbach violated their First Amendment rights by tampering

with Innovator mail. Thus, viewed in a light most favorable to plaintiffs, there is evidence that defendants Bell, Dascenzo, Conway, Bradley, Gunther, Young and Schwellenbach individually participated in the asserted First Amendment violations.

Plaintiffs contend President Fagan and Vice President Keys participated in the asserted constitutional violations by failing to adequately investigate Dean Carter's phone calls to Regional Publishing. However, the doctrine of *respondeat superior* cannot be used to hold a supervisor liable for the asserted unconstitutional acts of a subordinate. *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001); *Zimmerman,* 226 F.3d at 574. Plaintiffs must show Keys and Fagan were personally involved in unconstitutional conduct, or that they approved or facilitated the conduct. *Chavez,* 251 F.3d at 651. But plaintiffs do not claim Keys and Fagan did anything more than fail to properly investigate Dean Carter's phone calls. A supervisor's negligence in detecting unconstitutional conduct is insufficient to hold the supervisor liable. *Id.* Plaintiffs also fail to present any evidence that Jane Wells or Peggy Woodard participated in constitutional violations. Therefore, summary judgment must be granted for defendants Keys, Fagan, Wells and Woodard.

### III. Qualified Immunity

Alternatively, defendants argue the doctrine of qualified immunity bars plaintiffs' claims because their conduct did not violate clearly established constitutional rights. Under the doctrine, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Upton v. Thompson,* 930 F.2d 1209, 1211-12 (7th Cir. 1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Plaintiffs bear the burden of showing that defendants' conduct violated a clearly established constitutional right. "This

requires the plaintiff[s] to offer either a closely analogous case or evidence that the defendants' conduct is patently violative of the constitutional right that reasonable officials would know without guidance from the courts." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 737 (7th Cir. 1994).

Plaintiffs claim Dascenzo, Bradley, Gunther and Young violated their First Amendment rights by replacing the IBM computers with Macintosh ones, failing to investigate break-ins to the newspaper's office, and holding a private meeting regarding plaintiffs' status as editors. Plaintiffs claim the Macintosh computers were not suitable for preparing a newspaper and therefore hindered their ability to publish the Innovator. They also claim the break-ins to the newspaper's office delayed publication of the Innovator and therefore inhibited their First Amendment right of expression. Plaintiffs do not present any case law that establishes a right to a certain type of computer or creates an affirmative duty on university officials to investigate crimes. Nor was the conduct of Dascenzo, Bradley, Gunther and Young patently violative of a constitutional right. Therefore, Dascenzo, Bradley, Gunther and Young are entitled to qualified immunity.

Plaintiffs claim Debra Conway violated their First Amendment rights by refusing to process Innovator materials and by destroying Innovator advertisement forms. Plaintiffs fail to present evidence that Conway's asserted actions were an attempt to frustrate their freedom of speech. Nor do they cite case law to support their claim. Because Conway's asserted conduct did not violate clearly established rights, she is entitled to qualified immunity.

Paul Schwellenbach is accused of destroying Innovator mail. Schwellenbach admits he returned mail to plaintiffs when the mail appeared to be personal and did not have proper postage. Plaintiffs present no evidence Schwellenbach's conduct was an attempt to frustrate their freedom of speech. Nor do plaintiffs cite authority to support their claim. Thus, Schwellenbach is entitled to

9

qualified immunity.

Plaintiffs contend Bell inhibited their freedom of speech by cancelling media board meetings that were necessary to obtain funds. The only case plaintiffs cite to support their claim against Bell is *Joyner v. Whiting*, 477 F.2d 456 (4th Cir. 1973). In *Joyner*, a university president terminated the school newspaper's financial support because he disapproved of its editorial comment. The court held a college may not restrict speech "simply because it finds the views expressed by any group to be abhorrent." *Id.* at 460. Thus, the court found the president's withdrawal of financial support to be an unconstitutional prior restraint. *Id.* at 462.

Plaintiffs claim cancellation of media board meetings was the equivalent of withholding financial support. But *Joyner* is distinguishable because *Joyner* held it is unconstitutional for a college official to suppress speech *because he disagrees with the students' expression. Id.* at 460. Here, it is undisputed the November and December meetings were canceled for legitimate reasons. Specifically, the November meeting was cancelled in order to allow Bell time to review the issues before the media board. Bell was appointed administrative liaison to the media board only one week prior to the November meeting. The December meeting was cancelled due to the hospitalization of media board chairman Ed Kammer. Thus, unlike the president in *Joyner*, Bell did not cancel the meetings in order to suppress plaintiffs' expression. Furthermore, Bell explicitly told plaintiffs in his December letter he would approve funding for the newspaper if they had an issue ready to be published. Therefore, plaintiffs fail to establish Bell violated a clearly established constitutional right by cancelling the meetings.

Plaintiffs also claim Bell violated their First Amendment rights by replacing an Innovator computer containing confidential files without permission, denying them access to computer

software, and failing to investigate break-ins to the newspaper's office. Plaintiffs fail to present evidence that Bell's actions were intended to inhibit their freedom of speech. Rather, it is undisputed Bell stored the computer software in his office for security reasons and removed and replaced the computer from the newspaper's office after plaintiffs complained it was non-functioning. After plaintiffs complained about the computer's removal, Bell returned it to their office. Plaintiffs also fail to establish Bell had a duty to investigate the break-ins or was responsible for them. Nor do plaintiffs cite any cases supporting their claims. Thus, Bell is entitled to qualified immunity.

Finally, plaintiffs claim Dean Carter's phone calls to Regional Publishing amounted to an unconstitutional prior restraint. Specifically, plaintiffs claim they were unable to publish the Innovator after Dean Carter's phone calls because of her threats to withhold payment to Regional Publishing. Plaintiffs cite *Fujishima v. Board of Education*, 460 F.2d 1355 (7th Cir. 192), *Antonelli v. Hammond*, 308 F. Supp. 1329 (D. Mass. 1970), and *Schiff v. Williams*, 519 F.2d 257 (5th Cir. 1975), to support their claim.

In *Fujishima,* the Seventh Circuit struck down as a prior restraint a school board rule prohibiting student distribution of literature on school grounds without obtaining prior approval. 460 F.2d at 1357. In *Antonelli,* a university official refused to authorize the printing of future editions of the university newspaper unless an administrator first approved the newspaper's content. The *Antonelli* court opined that "[b]ecause of the potentially great social value of a free student voice . . . it would be inconsistent with basic assumptions of First Amendment freedoms to permit a campus newspaper to be simply a vehicle for ideas the state or the college administration deems appropriate." *Id.* at 1337. The fact the university funded and created the newspaper was immaterial and the court held the policy was an unconstitutional prior restraint. *Id.* at 1337-38. *See also Stanley v. Magrath,*

719 F.2d 279, 282 (8th Cir. 1983) (it is unconstitutional for a public university to take adverse action against a student newspaper because of the content of the paper); *Joyner*, 477 F.2d at 460 (4th Cir. 1973) ("if a college has a student newspaper, its publication cannot be suppressed because college officials dislike its editorial comment").

In *Schiff*, the president of a state university dismissed the editors of the campus newspaper because the editors' poor grammar, spelling and language expression could have embarrassed the school. 519 F.2d at 257, 261. *Schiff* held the "right of free speech embodied in the publication of a college student newspaper cannot be controlled except under special circumstances." *Id.* at 260. The court opined poor grammar and language expression did not amount to "special circumstances" because these faults could not lead to a significant disruption on the university campus. Thus, the president's actions were unconstitutional. *Id.* at 261. Dean Carter was not constitutionally permitted to take adverse action against the newspaper because of its content or because of poor grammar or spelling. Accordingly, there is a disputed issue of material fact as to whether Dean Carter's asserted conduct violated plaintiffs' clearly established First Amendment rights.

Defendants argue *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988), cast doubt on the cases cited by plaintiffs. The court disagrees. *Hazelwood* involved a high school newspaper that was part of a journalism class. There, the Court held no constitutional violation occurred when a high school principal removed two articles from the school newspaper. Central to the Court's holding was the fact the school never opened the pages of the paper to "indiscriminate use" by student editors, but rather maintained the paper as a supervised learning experience. *Id.* at 267, 270. Here, however, all editorial decisions were made by student editors and the Innovator was not part of a class, but was an autonomous student organization. The *Hazelwood* decision is also

distinguishable because it involved a high school as opposed to a university. *Id.* at 273 n.7 ("We need not now decide whether the same degree of deference is appropriate with respect to school-sponsored expressive activities at the college and university level"). Therefore, Dean Carter is not entitled to qualified immunity.

## CONCLUSION

The motion for summary judgment is granted as to all defendants except Patricia Carter.

November 13, 2001

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge